# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

HERBERT SNELLING, )
)
    Plaintiff, )
)
    v. )
HAMPTON ROADS )
SANITATION DISTRICT )
)
    Defendant )

## COMPLAINT

Plaintiff, Herbert Snelling, by counsel Thomas Shumaker, brings this employment discrimination action against his former employer.

## INTRODUCTION

1. This is a civil rights action for failure to grant a religious accommodation and discriminatory termination on the basis of religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII"). Plaintiff seeks injunctive relief, damages, and attorney's fees and costs.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3. This Court has personal jurisdiction over Defendant because it performed the acts and omissions complained of within this District.

4. Pursuant to 28 U.S.C. § 1391(b) and Local Rule 3(c), venue is proper in the Eastern District of Virginia, Norfolk Division because Plaintiff resided in this District and Division during all relevant time, because Defendant employed Plaintiff in this District and Division, and because

the unlawful employment practices which give rise to Plaintiff's claims occurred in this District and Division.

<strong><u>ADMINISTRATIVE PROCEEDINGS</u></strong>

5. On or about January 18, 2022, Plaintiff Herbert Snelling ("Snelling") filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") encompassing the discriminatory conduct that is the subject of this Complaint. A copy is attached as Exhibit "1."

6. On August 15, 2022, Mr. Snelling received a Notice of Right to Sue from the EEOC and that Notice attached and incorporated herein as Exhibit "2". Because this Complaint is filed within 90 days of said Notice of Right to Sue, Mr. Snelling has fulfilled all administrative prerequisites to the prosecution of his claims in this Court.

<strong><u>THE PARTIES</u></strong>

7. Mr. Snelling is an adult male resident of the City of Virginia Beach in the Commonwealth of Virginia.

8. Defendant HRSD Corporation ("HRSD") is a municipal corporation and is headquartered at 1434 Air Rail Avenue, Virginia Beach, Virginia.

<strong><u>STATEMENT OF FACTS</u></strong>

9. HRSD was created by a 1960 Act of the Virginia General Assembly to provide wastewater treatment throughout Hampton Roads.

10. During the relevant time period, HRSD was Snelling's employer and also employed over 300 other persons.

11. Snelling was an employee of HRSD from August of 2009 until December 2, 2021.

12. Effective August of 2020, Snelling was appointed as the Plant Superintendent at HRSD's Army Base Treatment Plant in Norfolk, Va.

13. Starting sometime in the Spring of 2021, HRSD set a company-wide goal of 70% of its employees getting vaccinated against COVID-19 by July 1, 2021.

14. In order to accomplish this goal, HRSD began pressuring employees to get vaccinated.

15. On June 16, 2021, HRSD set a goal of having 80% of its employees vaccinated by August 2, 2021.

16. As a deeply religious individual, Mr. Snelling sincerely believed that vaccinations violated his Christian beliefs because, for among other reasons, the vaccines were developed using and/or contained aborted fetal cells.

17. Therefore, on June 22, 2021, Mr. Snelling submitted a request for a religious exemption from obtaining the COVID-19 vaccine in the event HRSD determined to make obtaining the vaccine mandatory in the future.

18. Soon thereafter, Snelling's direct supervisor, Sami Ghosn attempted on numerous times to pressure Snelling to forgo his religious beliefs.

19. Ghosn told Snelling about religious leaders who have been vaccinated.

20. Ghosn forwarded emails to Snelling, which Ghosn claimed were from a Christian doctor, in an effort to convince Snelling that his religious beliefs about the vaccines were untrue.

21. Ghosn twice told Snelling that he should quit if he did not agree with HRSD's vaccination efforts.

22. On August 18, 2021, HRSD's then General Manager, Ted Henefin, sent a company-wide mail stating, in pertinent part, "Several large employers, including several local

governments are rolling out new regular testing requirements for unvaccinated employees. We have looked into this and continue to research how we might use testing as another tool to protect employee health and the health of the community we serve. Unfortunately, mass regular testing is challenging and potentially disruptive to implement. For that reason, we have not followed suit but continue to evaluate testing options."

23. On August 20, 2021, HRSD implemented a policy requiring all new employees to be fully vaccinated.

24. In August of 2021, Mr. Snelling caught COVID-19 and was allowed to work remotely while he quarantined for two weeks.

25. During those two weeks, one or more of Snelling's subordinate supervisors assisted with and/or filled in on some of Snelling's duties.

26. In October of 2021, Snelling again needed to work remotely for about 2 weeks, this time because his son could not attend school after being in close contact with someone at the school who tested positive for COVID.

27. HRSD allowed Snelling to work remotely for two weeks in October of 2021.

28. On August 25, 2021, HRSD General Manager Henefin sent a company-wide email stating, among other things, that "Over the past week there have been a number of changes; …many employers including the US Military mandated vaccines for their employees; … and OSHA has issued revised guidance (which we are still reviewing). I anticipate we will be issuing some revised guidance next week as a result of the new OSHA guidelines."

29. On August 30, 2021, HRSD mandated that all employees where masks while at work, regardless of whether they were vaccinated.

30. On or about September 14, 2021, HRSD adopted a mandatory COVID-19 vaccination policy that required all employees to be vaccinated no later than December 1, 2021 or be terminated.

31. On September 14, 2021, Ghosn sent an email to Snelling and others, writing "My bottom line is: based on statistics, friends, doctor friends and my doctor. It is evident that we need to get vaccinated."

32. On September 14, 2021, Snelling emailed HRSD's HR Department asking "I am curious on the status of the religious exemption I submitted with the talks of the mandate I am having a little anxiety to see where I stand with the organization."

33. By letter dated September 16, 2021, HRSD denied Snelling's request for religious exemption.

34. Mr. Snelling appealed the decision of the September 16, 2021 letter on or around November 4, 2021.

35. Sometime thereafter, Mr. Snelling met with HRSD's Human Resources Department.

36. After that meeting, HRSD purportedly granted Mr. Snelling's request for a religious exemption from HRSD's mandatory COVID-19 vaccination policy.

37. Later, by letter November 18, 2021, HRSD informed Snelling that it would not accommodate him.

38. HRSD could have granted one or more reasonable accommodations that would not have posed an undue hardship. For example, HRSD could have allowed him to do much of his work remotely, and/or continue to wear a mask over his mouth and nose, and/or wear a face mask

and nitrile gloves, and/or take weekly Covid tests, and/or communicate with employees over a radio, and/or transfer him to a vacant job, and/or put him on a leave of absence.

39. The above-referenced examples of accommodations that existed were reasonable and would not have posed an undue hardship because HRSD allowed the Plant Superintendent at its VIP Treatment Plant to work remotely for over a year.

40. The above-referenced examples of accommodations that existed were reasonable and would not have posed an undue hardship because Mr. Snelling caught and recovered COVID-19 in August of 2021 and, therefore, naturally developed long-term immune protection.

41. The above-referenced examples are reasonable and would not have posed an undue hardship because HRSD's COVID precautions included mandating masks (regardless of vaccination status) while indoors, mandating masks (regardless of vaccination status) while outside if in close proximity to others, and mandating physical distancing.

42. The above-referenced examples are reasonable and would not have posed an undue hardship because the duties and details of Snelling's job allowed him to maintain 6 ft or greater physical distance when interacting with employees, contractors and drivers.

43. The above-referenced examples are reasonable and would not have posed an undue hardship because the duties and details of Snelling's job allowed him to Telework occasionally.

44. The above-referenced examples are reasonable and would not have posed an undue hardship because Snelling's subordinate supervisors could have assisted with Snelling's duties in his absence.

45. The above-referenced examples are reasonable and would not have posed an undue hardship because HRSD had a contingency plan in which HRSD employee Jeff Powell was

identified as a qualified temporarily replacement who could immediately fill in for Snelling on or after December 2, 2021.

46. HRSD terminated Snelling's employment on December 2, 2021.

47. As of the date of his termination, Snelling had met the Defendant's legitimate expectations during all relevant times because, among other reasons: he was in compliance with all of HRSD's legitimate written policies; never received a negative performance evaluation; was given a raise three months before his termination; and was not fired for performance-based reasons.

48. HRSD waived its mandatory vaccination policy for at least ten (10) of its employees and allowed them to continue to work after December 2, 2021.

49. On February 28, 2022, HRSD filed a Position Statement with the EEOC, stating in pertinent part, that "HRSD absolutely denies that the Charging Party was subjected to discrimination, harassment, or retaliation based on his religious beliefs. Mr. Snelling's administrative separation was solely the result of HRSD's mandatory COVID-19 vaccination policy and HRSD being unable to reasonably accommodate him without enduring an undue hardship."

50. On April 8, 2022 – four months after terminating Snelling – HRSD rescinded its mandatory vaccination policy.

COUNT I
Discriminatory Discharge in Violation of Title VII

51. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

52. Mr. Snelling is a Christian with sincerely held religious beliefs.

53. HRSD was aware of Mr. Snelling's Christian beliefs.

54. Mr. Snelling's Christian beliefs were a motivating factor in his termination because HRSD treated similarly situated employees more favorably who are were not Christians or who had not requested a religious accommodation.

55. Mr. Snelling's Christian beliefs were a motivating factor in his termination because Mr. Ghosn, a senior HRSD official who is believed to have played a role in the termination decision, attempted to convince Snelling that Snelling's religious beliefs about the vaccines were untrue

56. As a result of his unlawful termination, Snelling has suffered and will continue to suffer a loss of wages, job search and related expenses and emotional distress.

57. In addition, Snelling has had to hire an attorney to attempt to recoup the wages he has lost.

COUNT II
Failure to Accommodate Religious Beliefs in Violation of Title VII

58. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.

59. Mr. Snelling has sincerely religious beliefs that conflicted with HRSD's mandatory vaccination policy.

60. Mr. Snelling informed HRSD of this conflict and requested an accommodation.

61. Reasonable accommodations existed.

62. Instead of offering or making a reasonable accommodation, HRSD terminated Snelling's employment.

63.     As a result, Snelling has suffered and will continue to suffer a loss of wages, job search and related expenses and emotional distress.

64.     In addition, Snelling has had to hire an attorney to attempt to recoup the wages he has lost.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Herbert Snelling prays for judgment against the Defendant, along with:

A. reinstatement;

B. lost wages from the date of discharge until the date of trial;

C. compensatory damages;

D. a permanent injunction ceasing Defendant's unlawful religious accommodation process;

E. reasonable attorney fees and costs;

F. pre- and post-judgment interest at the highest applicable legal or statutory rate; and

G.  any additional relief this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues raised herein and so triable.

Dated: November 1, 2022                    Respectfully Submitted


*/s/ Thomas Shumaker*
Thomas A. Shumaker II (Va. Bar No. 72039)
One Columbus Center, Suite 600
Virginia Beach, VA. 23462
Telephone: (757) 685-8686

Facsimile:   (757) 490-7804
Email: tas@employmentlawva.com

*Attorney for Plaintiff*